IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | Civil Action No. 11 C 3334 |
| ) | Criminal Action No. 94 CR 458 |
| v. ) | |
| ) | Honorable Charles R. Norgle |
| ) | |
| ARTURO GALLO-MORENO, ) | |

**OPINION AND ORDER**

Before the Court is Petitioner Arturo Gallo-Moreno's ("Gallo-Moreno") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. Gallo-Moreno challenges his sentence of 300 months' imprisonment following his conviction on nine counts, including: conspiracy to possess cocaine pursuant to 21 U.S.C. § 846, possession of cocaine with intent to distribute pursuant to 21 U.S.C. § 841(a)(1), attempt to distribute cocaine pursuant to 21 U.S.C. § 846, and use of a communication facility to facilitate the commission of a felony pursuant to 21 U.S.C. § 843. For the following reasons, the motion is denied.

### I. BACKGROUND[1]

In July of 1994, nine individuals were arrested following an undercover cocaine transaction set up by Drug Enforcement Agency ("DEA") confidential informant, Jose Antonio Varela ("Varela"), and DEA agent, Rafael Tovar ("Agent Tovar"). On the same day, an individual named Fernando Carrion called Agent Tovar (who was working undercover) in an attempt to reach Varela to set up another cocaine transaction. Throughout the following month, federal agents engaged in telephone conversations with Fernando Carrion, who identified himself as "the boss," although no one ever saw him in person. Several of the conversations with

---
[1] The facts of this case have been well documented and the background information is largely taken from United States v. Gallo-Moreno, 584 F.3d 751, 753-56 (7th Cir. 2009).

Fernando Carrion were recorded and compiled into approximately thirty minutes of audio-tape recordings.

On December 6, 1994, eleven defendants, including Fernando Carrion, were indicted as part of a large-scale drug conspiracy. Nine of the co-defendants—Angel Rojas-Jaramillo ("Rojas-Jaramillo"), Guillermo Olivares, Gustavo Arroyo, Manuel Garcia, Horacio Caballero, Luis Luna, Bernard Wilson, Esteban Gonzalez, and Arturo Rosales—were arraigned in December of 1994. On December 7, 1994, bench warrants were issued for the remaining defendants—Jose Gonzalez and Fernando Carrion. To date, Jose Gonzalez remains a fugitive.

In 1995, five of the co-defendants pleaded guilty, while the remaining four proceeded to a jury trial, where they were convicted on November 3, 1995. These nine defendants were sentenced on April 15 and 16, 1996. At that time, Fernando Carrion remained at large. Three of the co-defendants appealed, and their convictions were affirmed on January 20, 1998. United States v. Wilson, 134 F.3d 855 (7th Cir. 1998).

Meanwhile in 1997, during another undercover DEA investigation in Texas, Varela—who was once again working as an undercover confidential informant, though under a different name—met with Gallo-Moreno for a drug transaction. Upon their meeting, Varela and Gallo-Moreno recognized each other's voices from telephone conversations which took place during the 1994 conspiracy. Varela recognized Gallo-Moreno's voice as that of Fernando Carrion and informed federal agents of the identification. Gallo-Moreno was arrested on August 25, 1997, based on the outstanding warrant for Fernando Carrion. Shortly thereafter, Gallo-Moreno was arraigned and pleaded not guilty to the charges against Fernando Carrion. Following a superseding indictment, two years later, on August 3, 1999, Gallo-Moreno was charged with his involvement in the 1994 conspiracy.

In order to establish that Gallo-Moreno was in fact Fernando Carrion, the government had to prove his identity through voice identification because no one from the government had ever met Fernando Carrion in person. Eventually, voice exemplars were obtained from Gallo-Moreno and compared to the 1994 audio-recordings of Fernando Carrion previously compiled by the government.

Gallo-Moreno proceeded to a bench trial on January 18, 2002. At trial, the main issue was whether the government could meet its burden to prove that Gallo-Moreno was Fernando Carrion. The trial was held over several days in 2002, and then continued over a number of days throughout 2004 and 2005. The trial was continued for various reasons, including a period of time in which Gallo-Moreno pursued hiring a voice expert to rebut the positive voice identification made by Agent Tovar. During the trial, portions of testimony from the 1995 trial of the four co-defendants were entered into evidence as a stipulation. On March 18, 2005, Gallo-Moreno was found guilty of all nine counts. In so finding, the Court, as the trier of fact, determined beyond a reasonable doubt that Gallo-Moreno was Fernando Carrion. On February 22, 2006, Gallo-Moreno was sentenced to 300 months' imprisonment.

Gallo-Moreno appealed his conviction, challenging the admission of evidence of the voice identification made by Agent Tovar as well as evidence regarding the 1997 attempted drug transaction with Varela in Texas. His conviction was affirmed by the United States Court of Appeals for the Seventh Circuit on October 19, 2009.

Gallo-Moreno filed the instant motion, pro se, on May 17, 2011, wherein he states five grounds for relief. Subsequently, Gallo-Moreno obtained counsel who filed a reply brief, abandoning all but two grounds for relief. Gallo-Moreno's remaining grounds for relief allege: (1) ineffective assistance of appellate counsel due to counsel's failure to raise a violation of his

statutory and constitutional rights to a speedy trial; and (2) newly discovered evidence that he is not Fernando Carrion. The § 2255 motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255. This is an extraordinary remedy because a petitioner seeking § 2255 relief has already "had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Specifically, § 2255 states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). If a petitioner is able to successfully assert the aforementioned grounds, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. § 2255(b).

Post-conviction relief under § 2255, however, "is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quoting Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991)). In deciding a § 2255 motion for post-conviction relief, "evidence and inferences drawn from it are viewed in a light most favorable to the government." United States v. Galati, 230 F.3d 254, 258 (7th Cir. 2000).

"A § 2255 petition is neither a recapitulation nor a substitute for a direct appeal." McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996) (internal quotation marks and

citation omitted); see also United States v. Fleming, 676 F.3d 621, 625 (7th Cir. 2012). A petitioner is barred from raising constitutional issues in a § 2255 motion if those issues could have been challenged and decided on direct appeal unless a petitioner can show both (1) "good cause for failing to raise the issue" and (2) "actual prejudice." Galbraith v. United States, 313 F.3d 1001, 1006 (7th Cir. 2002). In addition, a petitioner is barred from re-arguing claims that were raised on direct appeal "absent a showing of changed circumstances." Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994).

## B. Ineffective Assistance of Appellate Counsel

First, Gallo-Moreno alleges that he is entitled to relief due to ineffective assistance of his appellate counsel. "The right to counsel is the right to effective assistance of counsel." Missouri v. Frye, 132 S. Ct. 1399, 1404 (2012). To prevail on an ineffective assistance of counsel claim, a petitioner must show that: (1) "counsel's performance was deficient," and that (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Because the Strickland test requires both deficient performance and prejudice, an ineffective assistance of counsel claim can fail for lack of prejudice "without ever considering the question of counsel's actual performance," and vice versa. United States v. Taylor, 569 F.3d 742, 748 (7th Cir. 2009).

In order to establish deficient performance, "the petitioner must show 'that counsel's representation fell below an objective standard of reasonableness.'" Koons v. United States, 639 F.3d 348, 351 (7th Cir. 2011) (quoting Strickland, 466 U.S. at 688)). "An appellate counsel's performance is deficient if [he] fails to argue an issue that is both obvious and clearly stronger than the issues raised. However, counsel is not required to raise every nonfrivolous issue on

5

appeal." Brown v. Finnan, 598 F.3d 416, 425 (7th Cir. 2010) (internal citations omitted). "Importantly, '[j]udicial scrutiny of counsel's performance must be highly deferential,' indulging a 'strong presumption' of effectiveness to combat 'the distorting effects of hindsight.'" Atkins v. Zenk, 667 F.3d 939, 944-45 (7th Cir. 2012) (quoting Strickland, 466 U.S. at 689) (alteration in original). In order to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Brown, 598 F.3d at 425 ("To prevail, [petitioner] must show that there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised.").

Here, Gallo-Moreno alleges that his appellate counsel was deficient because he failed to raise a violation of Gallo-Moreno's speedy trial rights on direct appeal. The government contends that counsel was not ineffective in choosing to forgo an argument for a speedy trial violation, if any, in exchange for stronger arguments which were raised—namely, challenging Agent Tovar's voice identification and the admission of evidence pursuant to Federal Rule of Evidence 404(b).

With the exception of justifiable exclusions, "[p]ursuant to the Speedy Trial Act, criminal trials must commence within 70 days of the indictment or the defendant's initial appearance, whichever is later." United States v. Hassebrock, 663 F.3d 906, 912 (7th Cir. 2011) (citing 18 U.S.C. § 3161(c)(1)). Constitutional violations of a defendant's speedy trial rights are evaluated using a four-part-test: "(1) whether the delay was uncommonly long, (2) whether the government or the defendant is more to blame for the delay, (3) whether the defendant asserted his right to a speedy trial in due course and (4) whether the defendant suffered prejudice as a result of the delay." Id. at 915.

Gallo-Moreno argues that a violation of his rights under the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.* and the speedy trial clause of the Sixth Amendment, U.S. Const. amend. VI, occurred during the time from his arraignment on August 26, 1997 through approximately June 28, 1999, when a joint motion to exclude time was entered, excluding time through August 30, 1999. However, a superseding indictment against Gallo-Moreno—and adding co-defendant Jose Gonzalez—was filed on August 3, 1999. "[B]ecause the superseding indictment added additional defendants"—in this case, Jose Gonzalez—"the relevant document that marks the beginning of the speedy trial calculation is the superseding indictment, not the initial indictment." United States v. Harris, 567 F.3d 846, 849 (7th Cir. 2009). Accordingly, any delay relating to Gallo-Moreno's original indictment is irrelevant. In any event, Gallo-Moreno failed to move to dismiss the indictment prior to trial, and consequently waived his right under the Speedy Trial Act. See Hassebrock, 663 F.3d at 912. Because Gallo-Moreno waived his rights under the Speedy Trial Act and otherwise suffered no violation due to the filing of a superseding indictment adding an additional defendant, the Court finds that appellate counsel was not deficient in failing to raise this issue on appeal. See Brown, 598 F.3d at 425.

In addition, Gallo-Moreno argues generally that his constitutional right to a speedy trial under the Sixth Amendment was violated as a result of the three-year duration of his bench trial, and/or the length of time between his arrest on August 25, 1997, and his ultimate conviction on March 18, 2005. Counsel for Gallo-Moreno acknowledges that he was unable to find any cases to support this theory and that it appears to be a case of first impression. The Court notes that controlling precedent regarding speedy trial rights concerns the delay, if any, before trial, not during trial. See Doggett v. United States, 505 U.S. 647, 651 (1992). Because there is no pertinent authority to support this argument, it does not constitute an "obvious" argument, or one

that would be "clearly stronger" than the arguments raised by appellate counsel. Brown, 598 F.3d at 425. Accordingly, the Court finds that appellate counsel was not deficient in failing to raise this issue on direct appeal. For the foregoing reasons, the Court rejects Gallo-Moreno's claim of ineffective assistance of appellate counsel.

## C. Newly Discovered Evidence

Gallo-Moreno's second and final ground for relief is based on his mere belief that he has obtained newly discovered evidence proving that he is not Fernando Carrion. Specifically, Gallo-Moreno alleges that co-defendant Rojas-Jaramillo sent him two letters on January 8, 2010 and February 21, 2010, wherein Rojas-Jaramillo tells Gallo-Moreno that he is the only one who knows that Gallo-Moreno is not Fernando Carrion. In addition, in light of Rojas-Jaramillo's letters, Gallo-Moreno seeks to conduct discovery on the issue of the true identity of Fernando Carrion. "[T]he broad discovery provisions of the Federal Rules of Civil Procedure [do] not apply in habeas proceedings." Bracy v. Gramley, 520 U.S. 899, 904 (1997) (internal quotation marks and citation omitted). Instead, a habeas petitioner must: (1) "make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation;" and (2) "show good cause for the discovery." Hubanks v. Frank, 392 F.3d 926, 933 (7th Cir. 2004) (internal quotation marks and citations omitted).

The government argues that Rojas-Jaramillo's letters do not constitute newly discovered evidence because the identity of his co-defendants or any information known by them was available to Gallo-Moreno at the time of his trial. If Rojas-Jaramillo has knowledge that Gallo-Moreno—a man he says he has never met—is not Fernando Carrion, there is no reason to believe that he did not also have that knowledge at the time of Gallo-Moreno's trial. Therefore, Rojas-Jaramillo's letters do not constitute newly discovered evidence simply because they were sent

five years after Gallo-Moreno's conviction. Accordingly, Gallo-Moreno fails to show good cause to conduct further discovery on this issue.

In any event, an argument for "newly discovered" evidence on a fact issue for purposes of proving one's innocence—such as the "true" identity of Fernando Carrion here—is improper on a § 2255 motion for collateral relief. "An argument of actual innocence, based on newly discovered evidence, does not implicate the Constitution, and so a Rule 33 motion that actually argues innocence, rather than offers 'new evidence of a constitutional violation or other ground of collateral attack,' is not a § 2255 filing." Ruth v. United States, 266 F.3d 658, 661 (7th Cir. 2001); see also United States v. Evans, 224 F.3d 670, 673-74 (7th Cir. 2000) ("A *bona fide* motion for a new trial on the basis of newly discovered evidence falls outside § 2255 para.1 because it does not contend that the conviction or sentence violates the Constitution or any statute."). Therefore, the Court declines to consider such newly discovered evidence in the instant motion, and likewise denies Gallo-Moreno's request to conduct discovery on the issue. See Mankarious v. United States, 282 F.3d 940, 945-46 (7th Cir. 2002) ("Thus, [petitioner's] claim of newly discovered evidence, untimely under Rule 33, does not meet the requirements of § 2255 and may not, therefore, be considered.").

## III. CONCLUSION

For the foregoing reasons, Gallo-Moreno's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is denied. The Court denies a Certificate of Appealability pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: May 23, 2013